**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZURU (SINGAPORE) PTE. LTD;<br>ZURU INC., )<br><br>   Plaintiffs, )<br><br>  v. )<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED<br>LIABILITY COMPANIES, PARTNERSHIPS, AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A HERETO, )<br><br>   Defendants. ) | Case No.: |

**DECLARATION OF MICHAEL R. YELLIN  IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER**

Michael R. Yellin, pursuant to 28 U.S.C. § 1746 hereby declares as follows:

1.      This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2.      I am an attorney at law, duly admitted to practice before the Courts of the State of New York and the United States District Court for the Southern District of New York. I am one of the attorneys for Plaintiffs ZURU (Singapore) PTE., Ltd. and ZURU Inc., (together "Plaintiffs") in this action.

3.      According to a January 2011 MarkMonitor report entitled "Traffic  Report: Online Piracy and Counterfeiting," the combined traffic to 48 sites selling counterfeit goods was more than 240,000 visits per day on average or more than 87 million visits per year.  A 2012 MarkMonitor article entitled "White Paper: Seven Best Practices for Fighting Counterfeit Sales

Online" reported that counterfeiters' illicit online activities will cost legitimate businesses billions in lost revenue annually.  True and correct copies of these reports are attached hereto as **Exhibit 1**.

4.      According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. A true and correct copy of this report is attached hereto as **Exhibit 2**.

5.      A 2016 report by Business Action to Stop Counterfeiting and Piracy ("BASCAP") and the International Trademark Association ("INTA") entitled "The Economic Impacts of Counterfeiting and Piracy" included findings that counterfeit and pirated products account for an estimated $461 billion in losses in international trade in 2013, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. These figures are expected to increase each year. A true and correct copy of this report is attached hereto as **Exhibit 3**.

6.      A true and correct copy of the Internet Corporation for the Assigned Names and Numbers ("ICANN'") Registrar Accreditation Agreement is attached hereto as **Exhibit 4**. According to section 3.3 of the Registrar Accreditation Agreement established by ICANN, an individual or entity that registers a domain name is required to provide, on an interactive web page, its accurate contact details including a valid email and mailing address, amongst other information.

7.      A true and correct copy of the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters, to which China is a signatory, and the status table of signatures, ratifications, and accessions provided by the Hague Conference

on Private International Law ("HCCH"), are collectively attached hereto as **Exhibit 5.** According to Article I of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known."

8.      A machine translated version of the "Civil Procedure Law of the People's Republic of China (as amended by the Decision of August 31, 2012, on Amending the Civil Procedure Law of the People's Republic of China)" from the World Intellectual Property Organization's online Lex Database Search, is attached hereto as **Exhibit 6** and accessible at (https://wipolex.wipo.int/en/text/475467). Chapter VII, Section 2, of the Civil Procedure Law governs service of process. Article 92 of the law provides that, "if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law, a document shall be served by public announcement."

9.      In this action, Plaintiffs are requesting *ex parte* relief based on claims for trademark counterfeiting and copyright infringement. It is respectfully submitted that *ex parte* relief is necessary to avoid immediate and irreparable injury. Indeed, if Defendants were to learn of these proceedings prematurely, the likely result would be the destruction of relevant documentary evidence and the hiding or transferring of assets to foreign jurisdictions, which would frustrate the purpose of the underlying law and would interfere with this Court's ability to grant relief.

10.      As set forth in the Declaration of Sherin Xu ("Xu Decl."), submitted herewith, Defendants in this case and in other similar cases use a variety of common tactics to evade enforcement. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Moreover, counterfeiters like Defendants typically maintain

off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts.  See Xu Decl., ¶ 28.

11.     Suffice it to say, proceeding *ex parte* until temporary restraints are imposed is necessary to avoid immediate and irreparable injury.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 22, 2022 in New York, New York.

*/s/ Michael R. Yellin*
Michael R. Yellin