UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ZURU (SINGAPORE) PTE., LTD;<br>ZURU INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: |
| THE INDIVIDUALS, CORPORATIONS, LIMITED<br>LIABILITY COMPANIES, PARTNERSHIPS, AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A HERETO, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |

**DECLARATION OF SHERIN XU**

I, Sherin Xu, declare and state as follows:

1.     This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2.     I make this declaration in support of Plaintiffs' application for entry of an Order to Show Cause with temporary restraints, and other relief (the "Application").

3.     I am Senior Legal Operations Manager and & IP Advisor for the ZURU Group of companies, including ZURU (SINGAPORE) Pte. Ltd and ZURU Inc. (collectively, "ZURU"). I am knowledgeable about or have access to business records concerning key aspects of the brand protection operation of ZURU including, but not limited to, trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, media coverage, and associated

1

international operations. I make this declaration from my matters within my own knowledge unless stated otherwise.

4.  Plaintiff ZURU (SINGAPORE) Pte. Ltd is the owner of both the ROBO FISH trademark, which is covered by U.S. Trademark Registration No. 4440702, and the ROBO ALIVE trademark, which is covered by U.S. Trademark Registration 5294215 (together, the "ROBO FISH Trademarks"). The registrations are valid, subsisting, and in full force and effect.

5.  Plaintiff ZURU (SINGAPORE) Pte. Ltd. also owns all exclusive rights in various copyrights for the ROBO FISH products, including without limitation copyrights covered by U.S. Copyright Office Registration Nos. VA 2-253-391, VA 2-253-392, VA 2-253-394, VA 2-253-396, VA 2-249-214, and VA 2-248-953 (the "ROBO FISH Copyright Registrations"). True and correct copies of the federal copyright registration certificates for the ROBO FISH Copyright Registrations and true and correct copies of the federal trademark registration certificates for the ROBO FISH Trademarks are collectively attached hereto as **Exhibit 1**.

6.  The Plaintiffs are all members of the ZURU Group of companies, which has grown into a diversified global enterprise. ZURU has earned an international reputation for quality, reliability, and value and is credited for many breakthroughs that have occurred in the toy industry, particularly in relation to its ROBO FISH product. ZURU is the official source of ROBO FISH products ("ROBO FISH Products") in the United States.

7.  Since at least August 2011, the ROBO FISH mark is and has been the subject of substantial and continuous marketing and promotion by Plaintiffs. Plaintiffs have and continue to widely market and promote the ROBO FISH mark in the industry and to consumers. Plaintiffs' promotional efforts include — by way of example but not limitation — substantial print media, the ROBO FISH website, social media sites, and point of sale materials. The ROBO ALIVE mark

similarly has been the subject of substantial marketing by Plaintiffs including by way of the same promotional efforts. The ROBO FISH Trademarks have been continuously used and never abandoned.

8.     Plaintiffs have expended substantial time, money, and other resources in advertising and otherwise promoting the ROBO FISH Trademarks as well as the ROBO FISH product, which embodies the totality of the ROBO FISH Copyright Registrations. As a result, products bearing either one or both of the ROBO FISH Trademarks and/or embodying the ROBO FISH Copyright Registrations are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs.

9.     The success of the ROBO FISH Trademarks, brand, and product has resulted in its significant counterfeiting. Consequently, Plaintiffs have implemented an anti-counterfeiting program and are investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps as part of that program.

10.     Through their investigation, Plaintiffs have identified numerous marketplace listings on platforms such as Alibaba, AliExpress, Amazon, DHGate, eBay, Made-in-China, OnBuy, Walmart, and Wish, including the fully interactive commercial online marketplace accounts identified in Schedule A attached to the Complaint (collectively, the "Defendant Internet Stores"), which are offering for sale, selling, and importing counterfeit products in connection with counterfeit versions of the federally registered ROBO FISH Trademarks and/or the ROBO FISH Copyright Registrations (the "Counterfeit Products") to consumers in this Judicial District and throughout the United States. Such Counterfeit Products appear to be genuine ROBO FISH Products, but which are actually inferior and unauthorized imitations of the ROBO FISH Products. Indeed, the Counterfeit Products are strikingly similar, or at the very least substantially similar to

the ROBO FISH Copyright Registration and/or infringe upon the ROBO FISH Trademarks.

11.     The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

12.     Despite Plaintiffs' enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores and engaging in continued sales of the Counterfeit Products.

13.     For example, to date, Plaintiffs' investigation of Defendants reveals that Defendants are using the Defendant Internet Stores to sell Counterfeit Products from foreign countries such as China to consumers in the U.S. and elsewhere, including consumers in this Judicial District.

14.     I have directly (or someone working under my direction supervision has) analyzed each of the Defendant Internet Stores and determined that Counterfeit Products were being offered for sale to the United States, including this Judicial District.

15.     This conclusion was reached through visual inspection of the products listed for sale on the Defendant Internet Stores, from which we confirmed

     a.  The Counterfeit Products are strikingly similar, or at the very least substantially similar to the ROBO FISH Copyright Registrations and/or marketed by reference to a mark identical or substantially identical to the ROBO Fish Trademarks;

     b.  Each Defendant Internet Store accepts payment in U.S. Dollars;

     c.  We attempted to initiate the purchase process of a Counterfeit Product from each of the Defendant Internet Stores, and each Defendant allows products to be shipped

to this Judicial District.

16.     True and correct copies of screenshot printouts showing the active Defendant Internet Stores, as well as pages confirming the ability to order and ship Counterfeit Products to New York (including this Judicial District) are collectively attached as **Exhibit 2**. More specifically, Exhibit 2 also contains proof of orders placed and accepted by numerous Defendant Internet Stores for the sale of Counterfeit Products to the Southern District of New York.

17.     We also confirmed that Defendants' seller names (identified in Schedule A to the Complaint) are not associated with any registered business. Moreover, most Defendants fail to disclose accurate and complete contact information on Alibaba, AliExpress, Amazon, DHGate, eBay, Made-in-China, OnBuy, Walmart, and Wish.

18.     To the best of our knowledge, Defendants and their Defendant Internet Stores do not conduct business with the Plaintiffs and do not have the right or authority to use the ROBO FISH Trademarks and/or the ROBO FISH Copyright Registrations for any reason.

19.     Upon information and belief, defendants like the Defendants in this case regularly rely on and use the e-mail addresses that the Defendant provide to Alibaba, AliExpress, Amazon, DHGate, eBay, Made-in-China, OnBuy, Walmart, and Wish and other third-party payment processers in order to communicate concerning monies received through the Defendant Internet Stores. Thus, obtaining such e-mail addresses from such online marketplace platforms such as Alibaba, AliExpress, Amazon, DHGate, eBay, Made-in-China, OnBuy, Walmart, and Wish is often times the fastest and most direct way to get into contact with individuals and entities like the Defendants that are engaged in the sale of counterfeit products.

20.     Upon information and belief, Defendants typically facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online

retailers, outlet stores, or wholesalers selling genuine ROBO FISH Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon and PayPal.

21.    The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

22.    Plaintiffs have not licensed or authorized Defendants to use the ROBO FISH Trademarks nor ROBO FISH Copyright Registrations, and none of the Defendants are authorized retailers of genuine ROBO FISH products.

23.    Upon information and belief, Defendants also typically deceive unknowing consumers by using either one or both of the ROBO FISH Trademarks without authorization within the content of their web sites (including by advertising the Counterfeit ROBO FISH Products, embodying the ROBO FISH Copyright Registrations by reference to either one or both of the ROBO FISH Trademarks) in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for ROBO FISH products. Additionally, Defendants typically use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine ROBO FISH products. Further, Defendants typically utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. Defendants also deceive unknowing

6

customers by using the ROBO FISH Copyright Registrations without authorization within the product descriptions of their Defendant Internet Stores to attract customers.

24.    Upon information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Internet Stores are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

25.    Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the online marketplace accounts. In addition, Counterfeit Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

26.    The Defendant Internet Stores also include other notable common features including use of the same shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, user-defined variables, domain redirection, lack of

contact information, identically or similarly priced similar hosting services, similar name servers, and the use of the same text and images.

27.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

28.     Based on my experience in investigating counterfeit products, including the instant investigation, counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as Amazon, eBay, and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts. Further, Defendants typically maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

29.     Monetary damages alone cannot adequately compensate Plaintiffs for ongoing infringement because monetary damages fail to address the loss of control of and damage to Plaintiffs' reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to Plaintiffs' reputation and goodwill by acts of infringement.

30.     Plaintiffs' goodwill and reputation are irreparably damaged when the ROBO FISH Trademarks and/or ROBO FISH Copyright Registrations are used in respect of goods not

authorized, produced, or manufactured by Plaintiffs. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Plaintiffs' reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

31.     Plaintiffs are further irreparably harmed by the unauthorized use of the ROBO FISH Trademarks and/or ROBO FISH Copyright Registrations because counterfeiters take away Plaintiffs' ability to control the nature and quality of products embodying or bearing the counterfeit ROBO FISH Trademarks and/or ROBO FISH Copyright Registrations. Loss of quality control over goods bearing the counterfeit ROBO FISH registrations and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

32.     The sale of Counterfeit ROBO FISH Products bearing and/or embodying the ROBO FISH Trademarks and/or ROBO FISH Copyright Registrations causes consumer confusion, which weakens Plaintiffs' brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit ROBO FISH Products they have purchased originated from Plaintiffs will come to believe that Plaintiffs offer low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine ROBO FISH products, resulting in a loss or undermining of Plaintiffs' reputation and goodwill. Counterfeit ROBO FISH Products, primarily coming from China can also be extremely dangerous and present alarming safety hazards to children.

33.     Plaintiffs are further irreparably damaged due to a loss of exclusivity. The ROBO FISH products are meant to be exclusive. Plaintiffs' extensive marketing and distribution of ROBO FISH products as part of their various marketing activities are aimed at growing and sustaining sales of ROBO FISH products. The ROBO FISH Trademarks and ROBO FISH Copyright

Registrations signify to consumers that the ROBO FISH products originate from Plaintiffs and are manufactured to high quality standards. When counterfeiters use any of the ROBO FISH registrations on or in respect of goods without Plaintiffs' authorization, the exclusivity of Plaintiffs' products, as well as Plaintiffs' reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

34.     Plaintiffs will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

Executed on June 21, 2022 in _____China_____

_____
Sherin Xu